Delmar Francis **LAMPE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–780.

Court of Criminal Appeals of Oklahoma.

Sept. 5, 1975.

H. L. Heiple, Norman, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., H. T. Garvin, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant Delmar Francis Lampe, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Cleveland County, Case No. CRF–72–358, for the offense of Unlawful Delivery of a Controlled Drug, in violation of 63 O.S.1971, § 2–401(B)(2). After a non-jury trial, defendant was found guilty and sentenced to serve a term of two (2) years' imprisonment and pay a fine of One ($1.-00) Dollar and court costs. From said judgment and sentence a timely appeal has been perfected to this Court.

The evidence adduced by the State at preliminary hearing (which was later submitted at trial as the State's case in chief) was as follows: Cleveland County Deputy Sheriff Arthur Linville testified that while working with an informant in an undercover capacity, he had purchased two bags of what appeared to be marijuana from defendant on April 23, 1972. He stated that he and the informant, Mike Jennings, went to a residence in Norman and knocked on the door. Two individuals (one of whom was later identified as defendant) answered the knock. Jennings asked defendant, whom neither Jennings nor Linville had met before, if "Fred" was there, and the other individual beside defendant replied that he was not. Defendant asked who they were, and Jennings replied, "Well I'm just a friend of his and we were going to try to find him and score a lid from him." [P.H. 37] The agents started to leave, when the other individual, pointing to defendant, told them, "He's got lids for sale." [P.H. 38]. Defendant then said, "Yes, I've got lids for ten dollars, if you want to come in." After seating the agents in the living room, defendant walked into another room, returning shortly with a white plastic bag. From this bag he removed several smaller clear plastic bags containing a green leafy substance and told them to take their choice. Linville put two of the bags in his pocket, paid defendant $20.00, and the agents left. During his direct testimony, Deputy Linville was asked if defendant (who was not seated at counsel table) was present in the courtroom. After being allowed to leave the witness stand in order to get a closer look, the witness stated that one of five male spectators seated in the courtroom "looks most like the Defendant that I encountered on that night . . ." [P.H. 33] A period of questioning followed relating to the transfer of the evidence to Cleveland County Undersheriff Gary Roberson for delivery to the state crime laboratory. The witness was then asked again if he could identify defendant in the courtroom. After the Court directed all spectators in the courtroom to stand, the witness positively identified defendant (who was the same individual earlier indicated by the witness), stating that he had lost weight and had much shorter hair than the last time the witness had seen him. Defendant was then directed, by the court, to take his seat at the counsel table.

On cross-examination the witness testified that he had viewed defendant on or about May 9, 1972, in the Cleveland County Jail.[1] Further, he stated that he had not known the "Fred" whom the agents had initially asked for in the course of the transaction, but had heard that he might have drugs for sale. He also stated, under cross-examination, that Jennings had been paid his expenses while serving as a confidential informant for the sheriff's office.

The State's second witness, state chemist Don Flynt, testified that he received the two bags of evidence from Undersheriff Roberson on May 5, 1972, and that chemical tests performed on the substance contained therein indicated that it was marijuana. Undersheriff Roberson next testified to his receipt of the evidence from Deputy Linville and his delivery of same to the crime bureau laboratory. After

[1]. His testimony as to this extrajudicial viewing will be discussed in greater detail under defendant's first assignment of error.

overruling defendant's Demurrer and Motions to Quash and Dismiss, the trial court bound defendant over for trial.

At trial, the State submitted the above testimony as its case in chief, and defendant produced evidence relating to the defense of entrapment. Defendant's first witness was Larry Michael Jennings a/k/a Mike Burton, the confidential informant employed by Deputy Linville in making the alleged purchase from defendant. Jennings testified that he was incarcerated in the Cleveland County Jail at the time of trial. He stated that he had worked in an undercover capacity with Deputy Linville at the time of the transaction. His version of the initial encounter at the front door of the residence was substantially the same as that given by Deputy Linville at the preliminary hearing. He added that he had told the occupants of the house that he was a friend of "Fred" Dolphus, and had hoped to "score" some marijuana from him. After defendant invited the agents inside, they engaged in general conversation for a few minutes. Jennings asked defendant if he had a joint, whereupon defendant produced one, which he and the two agents smoked. A few minutes later Jennings again mentioned his friendship with "Fred" and his desire to buy marijuana, at which point defendant agreed to sell some to them. At this stage of the testimony, defense counsel stipulated that defendant was the individual from whom the marijuana had been purchased. [T. 12] Jennings' version of the actual exchange differed from Linville's in that the former stated that defendant returned to the room with only two lids of marijuana rather than the larger assortment of baggies described by Linville. Jennings also stated, on redirect examination, that his purpose in cooperating with the sheriff's office was to "keep from going to the penitentiary" pursuant to unrelated charges then pending. He also stated that he was paid various sums of money by the sheriff's office.

Defendant next testified in his own behalf. While he admitted having marijuana in his house and selling the two lids in question to the agents, he stated that he had only displayed to the agents two lids which he sold, and not the larger assortment of baggies testified to by Linville. He also identified Fred Dolphus as his roommate and said that the other individual with him, when the agents first arrived, was his other roommate, Richard Evans.

After the parties stipulated that Mike Jennings had not been a duly commissioned officer of the Cleveland County Sheriff's Office, both sides rested. At sentencing, on June 3, 1974, judgment and sentence was imposed, as above set forth.

■ In his first assignment of error, defendant argues that the in-court identification of defendant by Deputy Linville was inadmissible because it was tainted by a pre-trial identification of defendant in person and by mug shots. The alleged taint, argues defendant, was particularly damaging in the instant case in light of the difficulties encountered by Deputy Linville in his attempts to identify defendant at preliminary hearing. Assuming arguendo that this assignment possesses some merit, which it does not, if there was error it was certainly cured by the stipulation made by defense counsel at trial admitting defendant's identity as the individual who had sold the marijuana to Deputy Linville. [T. 12] In addition, we note defendant's admission on the witness stand that he had made the sale. [T. 38]. Both the stipulation and testimonial admission were apparently made in support of the defense of entrapment interposed by defendant, and both were made after the alleged errors in admission of Linville's identification, had been noted and objected to by defense counsel at preliminary hearing. We agree with the State that such stipulation amounted to a waiver of proof of defendant's identity, and made defendant's objections to the admissibility of Deputy Linville's in-court identification moot. In support of its position, the State cites *Cordonnier v. State,* 86 Okl.Cr. 291, 192 P.2d 298 (1948), a prosecution for Larceny of an

Automobile After Former Conviction of a Felony. In that case, the defendant on appeal alleged that the State had failed to prove the former convictions alleged in the Information. This Court held that where defense counsel entered into a stipulation that defendant had sustained the former convictions, that such stipulation constituted a waiver of proof of that issue. In *Bowdry v. State,* 82 Okl.Cr. 119, 166 P.2d 1018 (1946), we held that a stipulation that the offense had occurred in Oklahoma County sufficed to establish venue in that county. We realize that in both the above cases the issue before this Court was the sufficiency of a stipulation as proof of the fact stipulated to, while in the instant case the issue is whether a stipulation as to the underlying fact can waive objections to evidence previously introduced in proof of that fact. We feel that the reasoning in the cited cases is nevertheless controlling by analogy, and that by stipulating as to defendant's identity, defense counsel waived objection to the State's earlier evidence proffered in proof of identity. See also *Pitman v. State,* Okl.Cr., 487 P.2d 716 (1971). We, accordingly, find defendant's first assignment of error to be without merit.

■ In his second assignment of error, defendant alleges that he was entrapped by Deputy Linville and undercover informant Jennings. Without unnecessarily prolonging this opinion, we note simply that this contention is frivolous when the facts of the sale in the instant case are compared with those in cases cited by both the State and defendant. Here the officers merely told defendant that they would like to buy some marijuana, to which defendant readily assented without being subjected to any pressure or undue influence. When faced with similar facts in *Nachtrieb v. State,* Okl.Cr., 513 P.2d 597, at page 599 (1973), a prosecution for Illegal Delivery of LSD, we stated:

"Under the facts, it is clear that defendant was ready and willing to commit the offense, and that . . . [the law en-

forcement agents] merely furnished defendant an opportunity to commit the crime. They only requested drugs once, defendant showed no surprise at the request and complied within ten minutes without any persuasion or coersion. It is well settled that merely furnishing an opportunity to commit a crime is not entrapment. In *McCart v. State,* Okl.Cr., 435 P.2d 419 (1968), and *In Re Patton,* Okl.Cr., 382 P.2d 28 (1963), this Court ruled:

'One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of "entrapment." *Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent.'* (Emphasis added)"

Defendant's allegation of entrapment is untenable, and his second assignment of error is without merit.

■ Defendant's third assignment of error, wherein he argues that the trial court erred in overruling his Demurrer interposed at the conclusion of the preliminary hearing, is premised upon the alleged incompetency of Deputy Linville's in-court identification of defendant. Without such identification, argues defendant, the evidence before the trial court at the time of the Demurrer was insufficient to bind the defendant over for trial. As this contention is merely a corollary of defendant's first assignment of error, we dismiss it for the reasons set forth in our discussion of the earlier assignment of error.

In his fourth assignment of error, defendant alleges that the State is barred from maintaining the instant prosecution because the case was twice dismissed at preliminary hearing for lack of witnesses.

A review of the record reveals that the case was first filed as CRF–72–219 on May 17, 1972, and came on for preliminary hearing on July 5, 1972, reset from June 1, 1972. The court minute reflects that the case was dismissed for lack of witnesses, and defendant was released and his bond exonerated. The case was then refiled by the State on July 5, 1972, as CRF–72–307, and preliminary hearing held on July 25, 1972. When the State's witnesses failed to appear, despite the return of praecipe of summons, the State moved for continuance, which was denied. The case was dismissed and defendant was again released and his bond exonerated. The State then refiled the case as CRF–72–358 on August 1, 1972. Preliminary hearing was held on October 17, 1972, at the conclusion of which defendant was ordered held for trial. The substance of defendant's argument is that the trial court erred in allowing the State to refile the charges after dismissal since, argues defendant, the State failed to comply with Rule 6 of this Court by failing to appeal the adverse rulings of the magistrate within the specified time limit. Defendant also argues that the refilings constituted harassment, denial of right to speedy trial, double jeopardy, and denial of due process. In support of his argument, defendant relies primarily on *State ex rel. Fallis v. Caldwell*, 498 P.2d 426 (1972), wherein this Court adopted Court Rule 6, giving the State the right to appeal an adverse ruling of a magistrate, and further providing that failure to file such application for appeal within the proper time would constitute a waiver of the State's right to appeal, and would render the magistrate's adverse ruling final. See 22 O.S. 1971, Appendix, Chapter 18 (Rules of the Court of Criminal Appeals), Rule 6.

■■ In our view, however, Rule 6 is not dispositive of the instant question, as it applies only to *adverse* rulings or orders, "sustaining a Motion to Suppress Evidence, Quashing an Information, Sustaining a Plea to the Jurisdiction or Demurrer to Information, *or an Order Discharging Defendant at preliminary examination be-* *cause of insufficiency of the Evidence* to establish either that a crime has been committed, or there is probable cause that the accused has committed a felony." [Emphasis added] See Court Rule 6, supra. In the instant case the two Orders of Dismissal issued by the trial court were made before the introduction of any evidence, and were made because of the nonappearance of witnesses. Thus, they were not "adverse" rulings on the merits of the State's evidence within the meaning of the above quoted language so as to bar prosecution for failure to comply with Rule 6. Neither would subsequent refiling under these facts constitute double jeopardy, denial of due process, or denial of speedy trial in view of 22 O.S.1971, §§ 815 and 817, which provide:

"§ 815 . . .

The court may either of its own motion or upon the application of the county attorney, and the furtherance of justice, order an action or indictment to be dismissed; but in that case the reasons of the dismissal must be set forth in the order, which must be entered upon the minutes."

"§ 817 . . .

An order for the dismissal of the action, as provided in this Article, is not a bar to any other prosecution for the same offense."

See *Ex parte Thornton*, 97 Okl.Cr. 266, 262 P.2d 176 (1953), wherein we held that a county attorney who had dismissed a charge by reason of the absence of the prosecuting witness could refile any time prior to the running of the statute of limitations. See also *Nicodemus v. District Court of Oklahoma County*, Okl.Cr., 473 P.2d 312, at page 315 (1970), where we stated:

"Although an examining magistrate at a preliminary examination may rule on the sufficiency of the evidence, motions to suppress and demurrers, which are binding and final in the preliminary examination, the failure of a magistrate to hold defendant for trial . . . is not a

bar to refiling the same prosecution under the present statutes of Oklahoma."

We, therefore find that the above cited statutes and case authority are not inconsistent with Rule 6 under the instant facts, and failure to comply with Rule 6 does not preclude the right to refile the charges as set forth in §§ 815 and 817, supra.

Although § 815 provides that the court may order a dismissal, as was done here, we believe that at least as to the second dismissal, the better procedure would have been to grant a continuance. The second dismissal was entered after the State moved for a continuance and when the record reflected return of the praecipe for summons. The preferable procedure, at this point, would have been to order a continuance and issue bench warrants for those witnesses who did not appear although properly summoned. The continuance is preferable because it sets a date certain for the next action on the matter. This certainty is in the best interest of the Court, the defendant, and the State. The uncertainties attendant the entering of a dismissal were clearly and easily avoidable.

In his final assignment of error defendant argues that 63 O.S.1971, § 2–401, the statute under which the instant charge was filed, is unconstitutional in that it prohibits the granting of suspended sentences, deferred sentences, or probation in cases involving controlled dangerous substances enumerated in the Act. We must consider this contention in light of the recent legislative enactment, 63 O.S.Supp.1975, § 2–401, wherein it states:

"A. Except as authorized by this act, it shall be unlawful for any person:

"1. To manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance;

"2. To create, distribute, or possess with intent to distribute, a counterfeit, controlled dangerous substance.

"B. Any person who violates this section with respect to:

"1. A substance classified in Schedule I or II which is a narcotic drug or lysergic acid diethylamide (LSD) is guilty of a felony and shall be sentenced to a term of imprisonment for not less than five (5) years nor more than twenty (20) years and a fine of not more than Twenty Thousand Dollars ($20,000.00). Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation except where the conviction is for a first offense. The provisions of this paragraph shall be applicable to all cases under this paragraph whether or not judgment and sentence on the effective date of this act have become final.

"2. Any other controlled dangerous substance classified in Schedule I, II, III, or IV is guilty of a felony and shall be sentenced to a term of imprisonment for not less than two (2) years nor more than ten (10) years and a fine of not more than Five Thousand Dollars ($5,000.00). Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation except where the conviction is for a first offense. The provisions of this paragraph shall be applicable to all cases under this paragraph whether or not judgment and sentence on the effective date of this act have become final.

"3. A substance classified in Schedule V is guilty of a felony and shall be sentenced to a term of imprisonment of not more than five (5) years and a fine of not more than One Thousand Dollars ($1,000.00).

"C. Any person convicted of a second or subsequent violation of this section is punishable by a term of imprisonment twice that otherwise authorized and by twice the fine otherwise authorized. Convictions for second or subsequent violations of this section shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation.

"D. Any person who is at least twenty-one (21) years of age and who violates this section by distributing a controlled dangerous substance to a person

under eighteen (18) years of age is punishable by twice the fine and by twice the imprisonment otherwise authorized."

We, therefore, conclude that such recent legislative enactment has rendered this assignment of error moot, as the trial court now has the authority to consider the defendant for a deferred or suspended sentence. This Court further advises the defendant that this Court's opinion today does not preclude the defendant from seeking relief on the basis of the recent legislative enactment, supra. Upon proper application to the trial court, the trial judge, within the legislative authorized discretion may: (1) vacate the judgment and sentence and defer sentencing under the provisions of 22 O.S.1971, § 991c; (2) suspend execution of the judgment and sentence under the provisions of 22 O.S. 1971, § 991a; or, (3) deny the application.

For all of the above and foregoing reasons, the judgment and sentence is accordingly *affirmed*.

BRETT, P. J., concurs in results.

BLISS, J., concurs.