Jimmy **GOODNER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–442.

Court of Criminal Appeals of Oklahoma.

Feb. 3, 1976.

Rehearing Denied Feb. 19, 1976.

654

Farrell M. Hatch, Spears & Hatch, Durant, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Jimmy Goodner, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Bryan County, Case No. CRF–74–98, with the crime of Unlawful Possession of Marijuana with Intent to Distribute, in violation of 63 O.S. 1971, § 2–401 ¶ B 2. The trial court sentenced the defendant to a term of five (5) years in the State Penitentiary and a fine of One Thousand Dollars ($1,000.00), and he appeals.

At the trial Detective Bob Hendrix of the Durant Police Department testified that he had been involved in law enforcement for approximately eighteen years; had participated in some seventy-five raids dealing with controlled dangerous substances; had known the defendant for fifteen years or more; and identified him in court. On August 15, 1974, a search warrant was obtained and directed toward 216 North 11th in Durant, where the defendant lived. The warrant was served by him and other officers and Detective Hendrix stated that he had been by the residence a number of times on a stakeout which had lasted some two months. In the search, approximately four pounds of marijuana[1], about $2,000.00 worth of money, checks, and money orders[2], Glad bags, scales, three books of cigarette papers, a jar of marijuana seeds and two roach clips[3], were found. In addition, during the search, a hair dryer was found which contained a substance which later was tested and proved to be marijuana.

Scott Hancock, a journalist and photographer for the *Durant Daily Democrat,* participated in the search at the request of Detective Hendrix, and took photographs of marijuana and money seized at the residence [State's Exhibits Nos. 1 and 2], and stated that his initials and the date said items were discovered were located on the photographs.

Odell Headrick, a Sergeant on the Durant Police Force, accompanied the party carrying out the search warrant. He served the warrant on the defendant, and during the search found what appeared to be numerous lids of marijuana in a dresser in the bedroom. Defendant was subsequently taken into custody and searched, and a "lid" of marijuana was found on the defendant, located "in the front of his trousers." [Tr. 115]

W. L. Bodine, an investigator for the District Attorney's Office, testified that he delivered evidence found in the residence of the defendant to the Oklahoma State Bureau of Investigation àt Oklahoma City, to be examined by a chemist.

Gerald Belyeu, a forensic chemist at the Oklahoma State Crime Bureau, testified that three separate tests were run on the substance found during the search, and all tested positive as containing tetrahydocannabinol (THC), by use of the Duquenois test and the Levine test, and that THC is found in all species of cannabis. Also, the small fragments found in the hair dryer tested positive for marijuana.

Tom Garner, a police officer for the City of Durant, who accompanied the search party on August 15, 1974, testified to substantially the same facts as the previous State's witnesses.

Detective Bob Hendrix was recalled by the State and he identified State's Exhibit No. 6 as the envelope addressed to Ms. Jane Goodner, 216 North 11th St., Durant, postmarked October 24, 1973. The prose-

---

1. Later tested and proved to be marijuana by Gerald Belyeu, a forensic chemist.

2. Forty-eight $20 bills; twenty-nine $10 bills; eight $5 bills; one $100 bill; a $10 check; a $150 check; and a $300 money order.

3. State's Exhibit No. 3.

cution stated that the envelope was admitted into evidence to show the defendant lived at the residence and had control of the dangerous substance found therein.

Jimmy Goodner testified in his own behalf and stated that he used marijuana and picked up the habit in Viet Nam. He explained the scales were used by his wife; the hairdryer was never used to dry marijuana; the marijuana was for his personal use and for "acquaintances" of his from the Service; the reason the money was in the house was due to the fact that he was a part-time mechanic and kept the money separately from his GI money for going to school, so that he could pay taxes on it; however, he did admit that he had a bank account.

On cross-examination, the defendant stated that some of his friends came by to smoke, but they were friends from the Service and not from Durant. He identified "roach clips," the marijuana cigarette, and a "pound" and a "bong" used as a smoking device and further stated that the market value of a lid is ten dollars. [Tr. 178] It was his further testimony that you could get fifteen to twenty baggies from a pound of marijuana.

Three character witnesses were called by the defense, who testified as to his good character and standing in the community.

The defendant's first assignment of error that the evidence was insufficient, and his second assignment of error that the trial court erred in refusing to give requested instructions, are premised on the conclusion that since the chemist testing the marijuana could not positively state whether it was cannabis sativa L., cannabis indica, or cannabis ruderalis, the State had failed to meet its burden of proof and the demurrer should have been sustained. His second assignment of error that the court, in refusing to give requested instructions, which in substance placed upon the State the burden of proving that the marijuana seized was cannabis sativa L. and not cannabis indica or cannabis ruderalis, was reversible error. The same argument here presented was recently considered in detail and rejected in *Winters v. State,* Okl.Cr., 545 P.2d 786 (1976), wherein we stated:

"It is therefore the opinion of this Court that the term *'cannabis sativa L.'* used in defining marijuana in Section 2–101(19) of the Uniform Controlled Dangerous Substances Act includes all forms, varieties, and species, heretofore or hereinafter classified, of the plant genus cannabis. Once the State proves that the substance in question is a proscribed portion of the plant cannabis and further proves that the substance tests positive for tetrahydocannabinol (THC) then it has met its burden of proof. . . ."

For a more thorough discussion of the cases dealing with this issue, see *Winters v. State,* supra, and cases cited therein.

It thus appearing the State had met its burden of proof, it was unnecessary to give the requested instructions, but to the contrary, it would have been error to give them. We, therefore, hold that the defendant's first and second assignments of error are wholly without merit.

Before considering the defendant's next assignments of error, we deem it necessary to set forth the pertinent part of the statute under which the prosecution was laid and the elements necessary for the State to prove. In light of the disposition of the Defendant's first and second assignments of error, we find that the State has proved its burden of Possession of Marijuana as defined under Schedule I, which is set forth in 63 O.S.1971, § 2–204, the pertinent part of which, is as follows:

"C. Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts,

isomers, and salts of isomers is possible within the specific chemical designation:

\*   \*   \*   \*   \*   \*

10. Marihuana. . . ."

The pertinent part of 63 O.S.1971, § 2–401, reads as follows:

"A. Except as authorized by this act, it shall be unlawful for any person:

1. To manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance;

2. To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance.

B. Any person who violates this section with respect to:

\*   \*   \*   \*   \*   \*

2. Any other controlled dangerous substance classified in Schedule I, II, III, or IV is guilty of a felony and shall be sentenced to a term of imprisonment for not less than two (2) years nor more than ten (10) years and a fine of not more than Five Thousand Dollars ($5,000.00). Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation. \* \* \*"

■ This leads us to a consideration of the meaning of the word "distribute," as set forth in this statute and the necessary elements of proof required thereunder. Webster's New Collegiate Dictionary defines "distribute" as follows: "to divide among several or many . . . syn: Dispense, Divide, Deal, Dole . . ." It is abundantly clear from the ordinary and accepted meaning of the word "distribute" that a distributor is not merely one who deals or sells, but that the term is synonymous with "dividing" or "sharing" or "delivering," with or without compensation.

Further, under Definitions, 63 O.S.1971, § 2–101, we find at paragraphs 10 and 12, the following:

"12. 'Distribute' means to deliver other than by administering or dispensing a controlled substance." [This is the identical language found in 21 U.S.C.A., § 802, ¶ 11.]

"10. 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled dangerous substance, whether or not there is an agency relationship."

■ We are of the opinion that when the defendant testified[4] this testimony was more than ample as a judicial confession to establish that he possessed the marijuana with the intent to distribute. In light of his testimony it is impossible to say how the jury could have arrived at any other conclusion but that the proof of his guilt was overwhelming.

·Bearing in mind that by the defendant's own testimony he admitted the possession of marijuana and that he shared it with friends on sundry occasions, we will now consider defendant's assignment of error that Detective Hendrix's testimony identi-

---

4. "Q. Will you tell the jury why you had that quantity of marijuana, if that is what it is, in your home?
A. For personal use and for some acquaintances of mine.
Q. Mr. Goodner, you ever sell that to anyone?
A. No, sir. I haven't.
Q. Your acquaintances drop by, who are they; not naming names, but who—what type of people are they?
A. Most of them friends of mine from the service.

\*   \*   \*   \*   \*

Q. If, for instance, you had three or four friends, how long would it take you to go through one of those pound bags there if it was in fact marijuana, if you smoke it—several people?
A. Depends on how many friends. We could go through one of these in a months time." [Tr. 161 & 162]
"Q. You are admitting that you and people that have visited your house do come by—
A. Yes, sir.
Q. —and smoke this?
A. Yes, sir." [Tr. 169]

fying the substance seized as marijuana, constituted error since the detective had not been properly qualified as an expert; and defendant's further assignment that Detective Hendrix injected an evidentiary harpoon when he testified that he was advised of the street price of marijuana as being $10.00 a lid by an informant who had purchased marijuana from the defendant.[5] As a separate assignment of error he argues that when the prosecutor referred to the testimony of Detective Hendrix in relation to the sale, this comment compounded the error committed during the trial and was improper argument.

■ Assuming that Detective Hendrix's identification of the marijuana seized was error, and further that his testimony relating to the prior purchase by a reliable informant from the defendant was an evidentiary harpoon and would be cause for reversal ordinarily, we are of the opinion that these errors were cured when the defendant freely and voluntarily testified in his own behalf in the manner heretofore stated. It is a well recognized principle that when a defendant voluntarily testifies in his own behalf, and his evidence as well as other competent evidence, clearly shows that he is guilty, a conviction will not be set aside for errors in the admission of evidence. See *Burns v. State,* 8 Okl.Cr. 554, 129 P. 657 (1913); *Teague v. State,* 13 Okl.Cr. 270, 163 P. 954 (1917); *Sanders v. State,* 46 Okl.Cr. 293, 287 P. 846 (1930); *McKee v. State,* 52 Okl.Cr. 289, 5 P.2d 176 (1931). Further, in *Dyer v. State,* 25 Okl. Cr. 328, 220 P. 69 (1923), we stated that where an accused admits facts that exclude every theory of innocence and which amount to a confession of guilt, incompetent evidence introduced by the State will be deemed harmless.

Since the defendant's guilt in this case was overwhelming in light of his judicial confession and the other evidence, and in accordance with the authorities cited, we are of the opinion that this assignment of error is totally without merit.

■ As his last assignment of error the defendant urges that the trial court erred in failing to disqualify himself from imposing sentence "on the ground that it is his announced policy not to grant suspended sentences to any subject under the marijuana statutes." [Tr. on sentencing, p. 2]

The date of imposition of judgment and sentence was May 6, 1975. Title 63 O.S. Supp.1975, § 2–401 § B2, was amended to provide, in pertinent part:

" . . . Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation except where the conviction is for a first offense. The provisions of this paragraph shall be applicable to all cases under this paragraph whether or not judgment and sentence on the effective date of this act have become final."

This amendment became effective on September 5, 1975, and the trial court's announced policy was in accordance with the legislation at the time of the imposition of judgment and sentence which prohibited the granting of a suspended or deferred sentence. Clearly, the trial court could not have suspended or deferred the judgment and sentence and we find this assignment of error to be without merit.

The defendant's attention is called to the case of *Lampe v. State,* Okl.Cr., 540 P.2d 590 (1975), as the procedure which should be followed if he desires to seek a suspended or deferred sentence. However, if the Honorable Sam Sullivan still has a fixed or announced public policy at this time against considering a deferred or suspended sentence upon the first violation, he should stand aside and disqualify himself. If, on the other hand, he can lay aside his former position and take into consideration the presentence report, the evidence of-

---

5. There were other incidents of alleged misconduct set forth in defendant's brief which do not possess sufficient merit to warrant discussion in this opinion in light of the ultimate conclusion reached.

fered on trial, and conscientiously consider the alternatives as set forth in *Lampe,* then he may proceed to hear any motion filed in accordance with *Lampe.* If, however, a motion is filed in accordance with *Lampe,* and the trial court cannot conscientiously lay aside his previous convictions relative to suspended or deferred sentences, he should disqualify himself, and certify his disqualification, to the Honorable Lavern Fishel, Presiding Judge of the Southeastern Administrative District of which Bryan County District Court, Judicial District 19, is a part, who shall assign a judge to hear said motion.

Nothing in this Opinion should be construed as an expression or indication by this Court, the ruling to be made by the trial court, or if he disqualify, the judge ruling on any motion. The judge so ruling must exercise his sound discretion.

Judgment and sentence *affirmed, with instructions.*

BRETT, P. J., and BLISS, J., concur.