**Douglas Lamarr CHASTEEN, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–692.**

Court of Criminal Appeals of Oklahoma.

June 28, 1976.

Rehearing Denied July 12, 1976.

Aston & Crockett by Ed R. Crockett, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Douglas L. Combs, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

The Appellant, Douglas Lamarr Chasteen, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–2729, under 63 O.S.1971, § 2–401 § A(1), for the offense of Possession of Marijuana with Intent to Distribute. A non-jury trial was held on the 9th and 16th days of April, 1975, and thereafter the defendant was sentenced to seven (7) years' imprisonment and a fine of Three Thousand Five Hundred Dollars ($3,500.00). From said judgment and sentence, defendant filed this timely appeal.

The first witness for the State was Officer Donald Wayne Bell of the Tulsa Police Department. Officer Bell testified that he had been a police officer for some seven years and eleven months, the last two years of which he had served as a narcotics detective. At this point, the officer gave his qualifications as a narcotics officer based on his experience, in an attempt to qualify him as an expert in the field of narcotics and marijuana identification. This witness then identified the defendant as Douglas Lamarr Chasteen. He further testified that he first saw the defendant on

the 17th day of November, 1974, when he went to the home of the defendant armed with a search warrant issued by the District Court of Tulsa County. He further testified that the home was located at 1335 South Atlanta in the City of Tulsa, Tulsa County, Oklahoma. The witness then identified and described the chain of custody concerning approximately fifty exhibits in number, which included: a black trunk, containing seven plastic baggies, a paper sack, a pair of scales, a brown grocery bag, an empty wrapper described by the witness as a kilo wrapper, cigarette paper, several pounds of substance and stems later identified as marijuana, a red trunk containing approximately thirty-two pounds of substance later identified as marijuana, and two photographs. The witness then testified that he advised the defendant and his wife of their constitutional rights under the *Miranda* decision, and the defendant acknowledged by word of mouth that he knew and understood these rights. The witness was then allowed to testify, over the objection of counsel for defense, that such scales and bags were used for the purpose to subdivide the marijuana into smaller lots in order that it might be sold on the street. The witness further gave his opinion testimony as to the street value of the marijuana, and as to how much marijuana a normal user could consume in a given period of time. Cross-examination by counsel for defense consisted mainly of questions concerning the issuance and service of a search warrant issued by the Tulsa County District Court for the premises located at 1335 Atlanta in that city and county. The police officer serving the warrant testified that he opened a screen door first, and then knocked on the hard door where he then identified himself as a police officer and gave his authority for entering the premises. [Tr. 61] The witness further testified that after conducting a search of an automobile seen coming from the home of defendant, additional information was added to the Affidavit in support of said search warrant, by hand. The witness further testified that some of the items identified by him had more than one purpose; such as, the plastic baggies and the brown paper sacks and that they could be employed for uses other than the distribution of controlled substances, or marijuana. On re-direct, the witness testified that in his opinion the substance belonged to the defendant in this case because it was located in his house. Re-cross was directed toward the issuance and service of the search warrant.

The final witness for the State was Dr. Ken Williamson, who testified that he was a forensic chemist employed by the Tulsa Police Department. Both parties agreed and stipulated into the record as to the qualifications of Dr. Williamson. After the stipulation, the witness testified that the green leafy substance contained in some of the exhibits identified by the previous witness, and the stems identified by the previous witness, were, in fact, in his opinion, marijuana. At this time the State offered all of the above exhibits into evidence, said exhibits having been seized as a result of the search warrant previously mentioned. The items were admitted over the objection of counsel for defense. After the admission of the exhibits the State announced that it rested, and after interposing his Demurrer, the defense rested.

■ In his first assignment of error, the defendant urges that the search and seizure in this case was unconstitutional and that, therefore, the court erred in admitting the evidence and exhibits over the objection of defendant. For his first proposition in this regard, the defendant argues that the Affidavit in support of the search warrant was substantially based on illegally-seized evidence, such that the search warrant was tainted. The Affidavit, in pertinent part, reads as follows:

"The undersigned affiant being first duly sworn, upon oath says: that in Tulsa County, Oklahoma, at and upon or within a certain vehicle, house, building

or premises, the curtilage thereof and the appurtenances thereto belonging, described as follows:

"A red brick dwelling house located on the east side of Atlanta Place in the 1300 block south Atlanta Place. This dwelling has a silver asbestos shingle roof and has white wood trim. Immediately south of the front door is a wooden plaque in the shape of the State of Oklahoma. On this plaque are the numbers 1335. The numbers 1335 also appear on the curb in front of the dwelling. The location of this dwelling is most commonly referred to as 1335 South Atlanta Place, Tulsa, Tulsa County, State of Oklahoma.

\* \* \* \* \* \*

"Affiant further states that they have been Tulsa Police Officers for approximately seven years and have been assigned to the narcotics division for over two years. That they have been trained by the Department of Justice in the recognition and identification of narcotics and other controlled dangerous substances and in the administration of field test to determine the probable contents of suspected drugs.

"Your Affiants further state that they have known a person for the past six months who is personally acquainted with the defendant and has had conversations with the defendant during the past few days concerning narcotics. On the 14th of November, 1974, said person had a conversation with the defendant and the defendant told said person that he would be leaving soon for Texas to get a large quantity of marijuana and would be bringing the marijuana back to his residence just as soon as he could make the trip. Said person further stated to Your Affiants that the defendant said he would be selling the pounds of marijuana and that said person could buy as many as he wants.

"The person providing Your Affiants with this information has given your affiants information concerning narcotics traffic in the Tulsa area on several occasions and as a result of his information there have been four convictions in Tulsa District Court for narcotics violations and a large quantity of narcotics and dangerous controlled substances have been seized during investigations involving those persons."

[The above portion of the Affidavit was type-written, and the following portion was hand-printed.]

"In the evening hours of the 17th day of Nov. 1974 said person called your Affiants and stated he had just left the above described dwelling and while there had observed several pounds of marijuana in green and white sacks.

"At approx. 7:45 P.M. on the 17th day of Nov. 1974 Your Affiants observed William Hurst come to the above residence in a late model green Chevrolet. Your Affiants observed William Hurst leave this veh. and go directly to the above described dwelling and remained there in for approx. 7 minutes, Your Affiants observed William Hurst leave the above described dwelling carrying three bags. William Hurst then got back in the late model Chev. with another unk. subj. and drove away from the area of the above described dwelling.

"Your Affiants then called a uniform officer to assist your Affiants in stoping [sic] and arresting William Hurst and recovering the three pounds of marijuana.

"William Hurst is a known narcotics user and dealer and has been arrested on drug charges by your Affiant on at least one previous occasion."

[The next portion was hand-written.]

"The above hand printed information was included prior to the administration of the oath in my presence.

Earl Truesdell
Judge."

[The last portion was type-written.]

"WHEREFORE, Affiant asks that a search warrant issue according to law, directed to any sheriff, policeman or law enforcement officer in the County of Tulsa, Oklahoma, commanding that he search the said persons, premises and/or vehicle, and take possession of all of the controlled dangerous substances, equipment and paraphernalia hereinbefore described, and any vehicle in which said dangerous substance is unlawfully kept, deposited or concealed.

/s/ Don Bell & Charles Jackson
Affiants."

The thrust of the defendant's contention that the Affidavit was substantially based upon illegally obtained evidence is premised on the hand-written portion relating to the search of the vehicle and seizure of drugs therefrom, as set forth in the hand-written portion of the Affidavit upon which the trial judge in the instant case had sustained a Motion to Suppress against the owners and occupants of the automobile in a separate and distinct prosecution wherein they (Hearst and Deathridge) were charged as defendants. There is not one scintilla of evidence tending to indicate that the defendant in the instant case had any proprietory interest or claim of ownership in the automobile seized, nor was he charged as a defendant as a result of that search and therefore would have no standing to raise the legality of the search and seizure of said vehicle had he been charged in that case. Even the most cursory examination of the Affidavit for the search warrant, above set forth, demonstrates that it established probable cause and met all the requirements set forth in *Guthrey v. State*, Okl.Cr., 507 P.2d 556. The search warrant issued on said Affidavit described with particularity the premises to be searched and the contraband sought to be seized therefrom. Clearly, this assignment of error is without merit.

■ For his second proposition under this assignment of error, the defendant argues that the search of the defendant's residence was illegal and evidence seized thereby inadmissible, due to premature action of an officer of the State in entering the defendant's residence to serve the search warrant. We are of the opinion that the search warrant was properly served. The record reveals that the officer opened an outer screen door, reached through the same and knocked on a hard door. Nowhere in the record can it be found that the defendant produced evidence to show that the officers entered the confines of his home without first giving their identity and authority for such a search. Therefore, this case is distinguishable from *Sears v. State*, Okl.Cr., 528 P.2d 732 (1954) where the officer serving the warrant actually "crossed the threshold" and entered the interior of the defendant's home.

■ For his second assignment of error, the defendant urges that the trial court erred in admitting into evidence, over his objection, testimony by Detective Bell concerning matters beyond his expertise and knowledge—testimony which prejudiced the trial judge's decision. Defendant particularly complains of the witness, Officer Bell, giving his opinion as to the street value of marijuana and as to the amount which could be consumed by a normal "user." We have previously held in *Davis v. State*, Okl.Cr., 514 P.2d 1195 (1973), that the street value of drugs is properly admissible to show intent to distribute. While the attempt to qualify Officer Bell as an expert in the field of marijuana and narcotics was something less than ideal, it was adequate to meet the test heretofore approved by this Court. Officer Bell did give testimony concerning his training, experience and knowledge in the field of narcotics and marijuana identification. Since the trial court alone was the sole judge of the value of this evidence and the weight to be given the opinion of the witness, we hold that this is not such error requiring modification or reversal.

■ The third assignment of error urged by defendant is that the evidence presented was insufficient for the trier of

the fact to find the defendant guilty be-
yond a reasonable doubt. More particular-
ly, the defendant argues that there was in-
sufficient evidence to convict the defend-
ant, which established his intent to distrib-
ute. In *Birdshead v. State*, Okl.Cr., 515
P.2d 1400 (1973), we stated:

". . . This Court has repeatedly
held that where there is competent evi-
dence in the record from which the trier
of facts could reasonably conclude that
the defendant was guilty as charged, this
Court will not interfere with the trier of
the facts determination upon the grounds
that evidence is insufficient to sustain
the verdict. See *Tilley v. State*, Okl.Cr.,
511 P.2d 586."

In the instant case, there was evidence of
a large quantity of marijuana, wrappers
and packages which are commonly used for
the distribution of marijuana, and of scales
used for the weight, measuring, and cut-
ting of marijuana. We are of the opinion
that, as a matter of law, there was suffi-
cient evidence from which the trier of fact
could determine that there was intent to
distribute. See *Reynolds v. State*, Okl.Cr.,
511 P.2d 1145 (1973), in which we cited
with approval *Murphy v. State*, 79 Okl.Cr.
31, 151 P.2d 69 (1944), wherein we stated:

" 'Where intent is necessary in the com-
mission of a crime, it is a question for
the jury, under all the facts and circum-
stances, of each individual case. It may
be proved by direct or circumstantial ev-
idence.' "

■ For his next assignment of error,
the defendant asserts that 63 O.S.1971, §
2–401 ¶ B(2) is unconstitutional. Defend-
ant argues that the subsection which pro-
hibits the deferred or suspended sentence is
in violation of the rule of separation of
powers and is, therefore, unconstitutional.
We need only observe that this Court has
held on numerous occasions that this stat-
ute is valid. See, *Black v. State*, Okl.Cr.,
509 P.2d 941 (1973). However, we should
also point out that the question is now
moot. See *Lampe v. State*, Okl.Cr., 540·

P.2d 590 (1975). In light of the judgment
and sentence in the above styled case, we
also call defense counsel's attention to 22
O.S.1971, § 991c and 22 O.S.1971, § 991a.

■ For his final assignment of error,
defendant urges that the trial court erred
in adhering to purported sentencing prohi-
bitions in the above cited statute and in
overruling a motion for continuance until
the revised Act was properly in effect.,
We are of the opinion that this argument
is without merit. The defendant was sen-
tenced under the authority of 63 O.S.1971,
§ 2–401 ¶ B(2) in force and effect at the
time the defendant was sentenced. The
term of seven (7) years and a fine of
Three Thousand Five Hundred Dollars
($3,500.00) is within the limits of the stat-
ute and does not, under the facts and cir-
cumstances, shock the conscience of this
Court.

■ For his second proposition under
this assignment of error, defendant argues
that the trial court erred in overruling his
motion for continuance. Defendant sought
the continuance on the basis that the Leg-
islature had enacted 63 O.S.Supp.1975, §
2–401, which would, effective September 5,
1975, authorize the court to suspend or de-
fer the judgment and sentence in the in-
stant case. This Court has repeatedly held
the question of granting a motion for con-
tinuance lies within the sound discretion of
the trial court. See, *Jones v. State*, Okl.
Cr., 456 P.2d 613 (1969) and *Lewis v.
State*, Okl.Cr., 462 P.2d 336 (1969). We
would only point out that the defendant in
the instant case was charged, tried, con-
victed and sentenced under the law appli-
cable at each of the above times. If the
defendant wishes to apply for a deferred
or suspended sentence in the trial court, he
should proceed in the manner set forth in
*Lampe,* supra. See, also *Goodner v. State,*
Okl.Cr., 546 P.2d 653 (1976).

For all of the above and foregoing rea-
sons, the judgment and sentence appealed
from is accordingly *AFFIRMED.*

BRETT, P. J., and BLISS, J., concur.